The Chief Justice delivered the opinion of the court as follows :—
 

 McKean, C. J.
 

 The point before the court has been well argued ; and on a full consideration of the subject, we now find little difficulty in pronouncing our decision. The first legislature under the commonwealth, has clearly fixed the rule, respecting the extension of British statutes, by enacting that “ such of the statutes as have been in force in the late province of Pennsylvania, should remain in force, till altered by the legislature ; ” and it appears in evidence, that the 28
 
 Edw. III, c.
 
 13, has been in force in the late province, since a trial
 
 per medietatum linguae
 
 was allowed in the case of a burglary committed by one
 
 Ottenreed,
 
 in the mansion-house of Mr. Clifford.
 

 Whether it was intended, by the act to which I have referred, to include only such statutes as were in force by an express extension of the legislature ; or to comprehend, likewise, such statutes, as have been extended by the judgment, of the supreme court, or received there in usage, seems to be, in some degree, uncertain. We *know, however, that many statutes, for near a century, have been practiced under, in the late province, which were L never adopted by the legislature ; and that they might be admitted by usage, and so become in force, was the opinion of the British parliament, declared in a statute passed in the year 1754, enabling legatees to be witnesses to wills and testaments. If, therefore, the statute in question has been, by any means, legally in force, a necessity is, seemingly, imposed upon us, to grant the challenge to the array, which has been made on the behalf of the prisoners.
 

 But if this was a new case, the judgment of the court would be different; for, the reasons which gave rise to the 28
 
 Edw. III.
 
 do not apply to the present government, nor to the general circumstances of the country. Prisoners have here a right to the testimony of their witnesses, upon oath, and to the assistance of counsel, as well in matters of fact as of law ; which was not the case in England, in the year 1353, when that statute was enacted. We do not think, indeed, that granting a
 
 medietas linguae,
 
 will, at all, contribute to the advancement of justice ; and we know it is a privilege which the citizens of Pennsylvania cannot reciprocally enjoy, as, at this day, there are no juries in any part of Europe, except in the British dominions.
 

 
 *74
 
 On the ground, however, of the precedent which has been shown, we hold ourselves bound, on this occasion, to allow the challenge, and to grant a trial
 
 per medietatem linguae,
 

 (a)
 

 (a)
 

 On the subject of the extension of British statutes to this state, see the remarks of C. J. McKean, in Morris v. Vanderen,
 
 ante,
 
 p. 67, and the report of the judges in 3 Binn. 595.
 

 In the case of Commonwealth
 
 v.
 
 La Vinez, MS., at a court of Oyer and Terminer, Philadelphia, May 3d, 1822, before Hallowell, president, and the associate judges, the same motion was made, as in Respubliea
 
 v.
 
 Mesca, and after argument, a
 
 tales de medietate lingum
 
 was awarded, on the authority of that case. That part of the stat. 28
 
 Edw. III.,
 
 c. 13, which gives an inquest
 
 de medietate
 
 lingum, is said by the judges of the supreme court, in their repoit, to be in force, but Judge Roberts, in his digest of the British statutes (p. 336), well remarks, that “ it is a matter of astonishment how this statute ever became incorporated in our laws.” And in a late case in the mayor’s court of Philadelphia (Com. v. De Mora, Dec. 1824, MS.), an inquest
 
 de medietate
 
 was refused, the court being equally divided in opinion; those who opposed the
 
 tales
 
 holding, that the act of 1805, regulating juries, had in effect abolished it.
 
 [1]
 

 [1]
 

 It is now provided, by act of 14th April any civil or criminal case whatever, be entitled 1884, § 149 (P. L. 868), that no alien shall, in to a jury
 
 de medietate lingua.